UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BAYTREE CAPITAL ASSOCIATES, LLC,
derivatively on behalf of,
BROADCASTER, INC.

Case No.: 08-CV-1602

Plaintiff,

- against -

NOLAN QUAN, MARTIN R. WADE III,
BLAIR MILLS, RICHARD BERMAN,
ANDREW GARRONI, JASON BRAZELL,
ROBERT GOULD, SANGER ROBINSON,
ALCHEMY COMMUNICATIONS, INC.,
FROSTHAM MARKETING, INC., PACIFICON
INTERNATIONAL, INC., LONGVIEW MEDIA,
INC., ACCESS MEDIA NETWORKS, INC.,
ALCHEMY F/X, INC., INNOVATIVE NETWORKS,
INC., BINARY SOURCE, INC., BROADCASTER,
LLC, TRANSGLOBAL MEDIA, LLC, SOFTWARE
PEOPLE, LLC, and ACCESS MEDIA
TECHNOLOGIES, LLC,

Defendants,

- and-

BROADCASTER, INC.

Nominal Defendant.
------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
NOMINAL DEFENDANT'S MOTION TO TRANSFER VENUE**

## <u>TABLE OF CONTENTS</u>

Preliminary Statement……………………………………………………1

Statement of Facts…………………………………………………………..4

Argument

I.    THE SOUTHERN DISTRICT OF NEW YORK IS THE PROPER VENUE
      FOR THIS ACTION AND THE NOMINAL DEFENDANT HAS NOT
      MET ITS BURDEN OF SHOWING THAT A BALANCE OF
      CONVENIENCE STRONGLY FAVORS TRANSFER……………………... 6

      A.  The Balance of Convenience Favors the Southern District of New York
          and a Denial of the Instant Motion…………………………………………7

          *Defendants Have Admitted New York is the Proper Venue*………………...7

          *Convenience of the Witnesses*…………………………………………… 8

          *Convenience of the Parties*…………………………………………… 16

          *Location of Relevant Documents and Relative Ease of
          Access to Sources of Proof*……………………………………………17

          *Locus of the Operative Facts*……………………………………………18

          *The Availability of Process to Compel the Attendance of
          Unwilling Witnesses*…………………………………………………...21

          *Relative Means of the Parties*…………………………………………… 22

          *The Forum's Familiarity with Governing Law*……………………………..22

          *Weight Accorded to Plaintiff's Choice of Forum*………………………… 23

          *Trial Efficiency and the Interest of Justice*………………………………… 24

      B.  The Southern District of New York was the Proper Forum in which to
          Commence this Action…………………………………………………...25

Conclusion……………………………………………………………… 27

# TABLE OF AUTHORITIES

<u>Cases</u>

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.* …………………………...15, 25
   138 F.3d 65, 72 (2d Cir. 1998)

*Ford Motor Co. v. Ryan*………………………………………………………………….6
   182 F.2d 329 (2d Cir. 1950)

*Bassali v. Johnson Controls, Inc.* …………………………………….………….6, 7
   No. 06 Civ. 4149, 2007 U.S. Dist. LEXIS 95143 (S.D.N.Y. 2008)

*Frame v. Whole Foods Market, Inc.* …………………………………………...6, 9, 16, 18
   No. 06 Civ. 7058, 2007 U.S. Dist. LEXIS 72720 (S.D.N.Y. 2007)

*George v. Ford Motor Co.,* ………………………………………………….. 22
   No. 03 Civ. 7643, 2007 U.S. Dist. LEXIS 61453 (S.D.N.Y. 2007).

*Columbia Pictures Indus., Inc. v. Fung* ……………………………………………….6, 25
   447 F.Supp.2d 306 (S.D.N.Y. 2006)

*Herbert Ltd. P'ship v. Electronic Arts, Inc.* …………………………………………..8, 11
   325 F.Supp.2d 282 (S.D.N.Y. 2004)

*WellQuest, Int'l, Inc. v. Genesis Intermedia.com, Inc.* ………………………………23
   No. 00 Civ. 6558, 2001 U.S. Dist. LEXIS 16757 (S.D.N.Y. 2001)

*Strauss v. West Highland Capital, Inc.* ………………………………………...17, 23
   No. 00 Civ. 01184, 2000 U.S. Dist. LEXIS 14937 (S.D.N.Y. 2000)

*Nat'l Union Fire Ins. Co. v. CPMS Investments*………………………….............23
   No. 93 Civ. 5088, 5089, 5090, 1996 U.S. Dist. LEXIS 83 (S.D.N.Y. 1996)

*Kirkland v. NY State Department of Correction* ……………………………………...19
   358 F.Supp. 1349 (S.D.N.Y. 1973)

*Audi AG v. Volkswagon of America, Inc.* …………………………………………9
   No. 04-70626, 2007 U.S. Dist. LEXIS 10054 (E.D. Mich. 2007)

*Otis & Co. v. Pennsylvania R. Co.* ……………………………………………..3
   57 F. Supp. 680, 681-82 (E.D. Pa. 1944)

<u>Statutes</u>

28 U.S.C. §1404……………………………………………………………………..6

28 U.S.C. §1391……………………………………………………..16, 25, 26, 27

28 U.S.C. §1441……………………………………………………………..16, 25

18 U.S.C. §196 ………………………………………………………… 27

Plaintiff Baytree Capital Associate, LLC ("Baytree" or "Plaintiff"), derivatively on behalf of Broadcaster, Inc., respectfully submits this memorandum of law in opposition to Nominal Defendant Broadcaster, Inc.'s ("Broadcaster" or "Nominal Defendant") motion to transfer venue to the Central District of California.

## PRELIMINARY STATEMENT

The Nominal Defendant's motion should be denied as the Southern District of New York is the proper venue for this action.  As set forth herein, the Nominal Defendant has not met its difficult burden of establishing an entitlement to a change of venue.  A transfer to California would cause significant negative repercussions. Most significantly, the renal cancer surgery of Mr. Gardner makes it now impossible for him to travel across country. As important, as this Court has announced its intention to treat the four related matters as one for venue purposes, a transfer would result in the likely abandonment of two of the matters by the plaintiff in those matters, Paul Goodman, due to financial limitations.

The Court is assisted in its determination of the New York venue question by an admission by the Nominal Defendant. Two months ago, the Nominal Defendant selected Daly & Pavlis LLC, located in Southport, Connecticut, to conduct a detailed, comprehensive audit of the issue of related party transactions. If the number of California witnesses, documents, proximity to the company operations on the ground were inconvenient or a problem from New York, the Nominal Defendant would never have ignored law firms all through out California and the rest of the nation and selected as the firm to conduct its audit, a firm just outside of New York City. A New York region firm

1

was chosen because the practical considerations of the investigation make New York the location comparable to or better than California in which to do the work.

The aptness of New York is demonstrated by the fact that four of five members of the Board of Directors of the company during the relevant time period work in, reside near, or prefer New York City as a venue. The former Chairman of the board of directors of Broadcaster who resigned due to the actions claimed herein also resides in New York.

Of great importance is the fact that Defendants have not provided either the Court or Plaintiff with a list of the various companies that ran the millions of dollars worth of advertisements or traffic generation, claiming that it takes time to generate such a list. Defendants mention only two companies concerning a possible mere $322,634 worth of work.[1] Ad On, with ownership in New York City, is located in Arizona and Value Click with the relevant division in New York City. It is very possible that all of the other companies will be located in New York City, or Connecticut or some other state closer to New York than California. As representatives from these companies are the most material of the witnesses, the refusal of Defendants to provide even a simple complete list of names and addresses along with gross billings affects the persuasiveness of their argument.

The Nominal Defendant asserts that the locus of operative facts lies in California. First, Martin Wade states that "[a]t no time have the operations of Broadcaster been conducted from that [New York] office, nor was it a "Broadcaster office." Wade Declaration at ¶ 9. This is a misstatement of the truth. On October 15, 2007, Martin Wade signed and filed an SEC Form 10-KSB on behalf of Broadcaster, in which he states

---

[1] Incredibly, even this miniscule amount of information hurts Defendants as the documents reveal that the $322,634 may actually be work with other non-Broadcaster accounts "whited-out" from the documents. *See* Exhibit "B" submitted herewith.

"Baytree also <u>provides a New York office for us</u> which is used on a regular basis by our Chief Executive Officer, Mr. Martin R. Wade, III." SEC Form 10-KSB at 49 (emphasis added). A copy of the October 15, 2007 SEC Form 10-KSB is annexed to the Sullivan Declaration as "<u>Exhibit A</u>". As described more fully below, Defendant Martin Wade, the Chief Executive Officer and Chairman of the Board of Directors of Broadcaster, lives in New Jersey and during the relevant time periods worked three days a week from an office in New York. Regular meetings of the Board of Directors were held in the New York office where at least three of the five members of the board were physically present, and one of the remaining two was located in Oklahoma. Much of the corporate work occurred exclusively in New York City.

Furthermore, this court should not hasten to transfer venue without any submission or position articulated on the part of seventeen of the twenty Defendants in this action. The Nominal Defendant's only argument is that many of the Defendants reside in California. Nominal Defendant makes this argument in the face of the fact that seventeen of these Defendants have elected to not participate in the one page "me too" Notice filed by Howrey on behalf of only three of the Defendants.[2] This leads to the final argument that the law prevents the Nominal Defendant from filing this motion for transfer. *See Otis & Co. v. Pennsylvania R. Co.*, 57 F. Supp. 680, 681-82 (E.D. Pa. 1944).

For the reasons stated herein, this court should deny the Nominal Defendant's motion to transfer and should retain the action in the Southern District of New York.

---

[2] The fact that the Declaration of Martin Wade states that the "individual Defendants join" the Nominal Defendant's motion has no effect on establishing the position of any other Defendant, be it an individual or a business entity, in this action.

## STATEMENT OF FACTS

The matter now before this Court is the looting of Broadcaster, Inc. On or about June 2, 2006, Defendant Nolan Quan acquired control of a publicly traded microcomputer software company known as "International Microcomputer Software" ("IMSI") through a company he controlled, Defendant AccessMedia. The name of IMSI was subsequently changed to Broadcaster, Inc. ("Broadcaster"). Since the acquisition, Defendant Nolan Quan has caused the systematic sale all of the business assets of IMSI generating $16 million in cash held in the bank accounts of Broadcaster. During the past fiscal year, $9,378,970 have been transferred to or promised to Defendant Quan, his wife, his son, or to companies he admits in filings with the United States Securities and Exchange Commission ("SEC") that he controls. In addition to the looting he acknowledges in SEC filings, as will be detailed further herein, over $15 million has been transferred to entities controlled, although not admitted control, by Defendant Quan ("Looted Funds").

The only "business" operation that could earn money and generate expenses was a malware operated by AccessMedia at the time it "merged" with IMSI ("Malware"). The Malware infected computers throughout country with unending pop up messages requiring payment to end the infection. Because of a prosecution by the United States Federal Trade Commission ("FTC"), the Malware was no longer a viable method to generate revenue. After the FTC prosecution, the Malware was retro-fitted to generate Broadcaster website hits in addition to the coercion of money payments. Thus, Defendants were able to generate millions of hits to the Broadcaster web site without the

4

need for advertising or other methods of traffic generation. All of this was accomplished at a nominal cost as the malware was already installed throughout the country.

Defendants transferred approximately $15 million to related parties, most often undisclosed, claiming that the transfer of money was the cost of generating the hits to the Broadcaster web site. Additionally, Defendant Quan has disclosed transferring as much as $9,378,970 himself, his wife, his son and entities he admits he controls.

In the three months ending September 30, 2007, revenues from the Malware shrank to nothing prior to the mid-September 2007 settlement of the FTC prosecution. Malware-generated Net Revenues plummeted dramatically, from $2,937,000 to $596,000 between the second quarter of 2006 and the second quarter of 2007.  Additionally, the company would shut down its operations two and a half months later in early December, 2007. Despite the disappearing revenues and shut down of operations, Defendant Quan compelled Broadcaster to increase the rate of the transfer of funds to as much as $2.5 million to companies he controlled.

The conduct of Defendant Quan and the other Defendants has become so egregious that they have been compelled to terminate the only two independent members of the Board of Directors of Broadcaster. In February of 2008, Broadcaster scheduled the termination of Dr. Orza and Paul Goodman as directors of the company, effective March 5, 2008. Dr. Orza is the Dean of the Meinders School of Business at Oklahoma City University. In response to the Defendants' conduct, Dr. Orza composed a letter of resignation that confirms the facts recounted in this action.

Broadcaster has announced in its 8K filing of December 19, 2007 that it is ceasing operations save the minimal maintenance of the free Broadcaster web site that generates

no revenue. Broadcaster has been true to its word in this instance and closed its operation

after the end of 2007. The offices of Broadcaster have now been largely closed and

vacated.

**ARGUMENT**

**I.  THE SOUTHERN DISTRICT OF NEW YORK IS THE PROPER VENUE
FOR THIS ACTION AND THE NOMINAL DEFENDANT HAS NOT MET
ITS BURDEN OF SHOWING THAT A BALANCE OF CONVENIENCE
STRONGLY FAVORS TRANSFER**

Pursuant to 28 U.S.C. §1404(a), a party may seek transfer of venue "[f]or the

convenience of the parties and witnesses." The moving party has the heavy burden of

making a "clear cut and convincing showing" of its entitlement to a transfer, *Columbia*

*Pictures Indus., Inc. v. Fung*, 447 F.Supp.2d 306, 309 (S.D.N.Y. 2006), and a "court

should not disturb a plaintiff's choice of forum unless the defendants make a clear and

convincing showing that the balance of convenience favors the defendants' choice."

*Frame v. Whole Foods Market, Inc.*, No. 06 Civ. 7058, 2007 U.S. Dist. LEXIS 72720,

*10 (S.D.N.Y. 2007); *see also Bassali v. Johnson Controls, Inc.*, No. 06 Civ. 4149, 2007

U.S. Dist. LEXIS 95143, *1-2 (S.D.N.Y. 2008) (quoting *Ford Motor Co. v. Ryan*, 182

F.2d 329, 330 (2d Cir. 1950) (stating that "[t]he moving party has 'the burden of making

out a strong case for transfer.'"); *Columbia Pictures Indus., Inc.,* 447 F.Supp.2d at 309

("Absent a clear cut and convincing showing by defendant that the balance of

convenience weighs strongly in favor of the transferee court, plaintiff's choice of forum

will not be set aside" (citations omitted)).

To satisfy its burden, a movant must establish (1) that the case could have been

commenced in the proposed transferee district and (2) that "the transfer promotes

convenience and justice." *Bassali*, 2007 U.S. Dist. LEXIS 95143, *2. Here, the Nominal

Defendant has not made the required "clear cut and convincing showing" that a transfer to the Central District of California is "strongly" favored. *Columbia Pictures Indus., Inc.*, 447 F.Supp.2d at 309.

A.    **The Balance of Convenience Favors the Southern District of New York and a Denial of the Instant Motion.**

In order to determine whether the transfer would promote convenience and justice, courts may consider the following factors:

(1)    the convenience of the witnesses;
(2)    the convenience of the parties;
(3)    the location of relevant documents and the relative ease of access to sources of proof;
(4)    the locus of the operative facts;
(5)    the availability of process to compel the attendance of unwilling witnesses;
(6)    the relative means of the parties;
(7)    the forum's familiarity with governing law;
(8)    the weight accorded to plaintiff's choice of forum; and
(9)    trial efficiency and the interest of justice, based on the totality of the circumstances.

*Columbia Pictures Indus., Inc.*, 447 F.Supp.2d at 309.  "There is no rigid formula for balancing these factors and no single one of them is determinative." *Bassali*, 2007 U.S. Dist. LEXIS 95143, *3 (quoting *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 561 (S.D.N.Y. 2000).

*Defendants Have Admitted New York is the Proper Venue*

The Court is assisted in its determination of the New York venue question by an admission by the Nominal Defendant. The Nominal Defendant claims now that working with the issue of related parties by interviewing witnesses, reviewing documents and events on the ground renders New York an improper venue. If that is true today, it would have been true two months ago.  If it were true two months ago, the Nominal Defendant

would never have selected a Connecticut law firm to conduct essentially the same review. Two months ago, the Nominal Defendant selected Daly & Pavlis LLC, located in Southport, Connecticut, to conduct a detailed, comprehensive audit of the issue of related party transactions.

Wherever located, the selected auditing law firm would have to travel across the country to interview witnesses in both the New York metropolitan region and California. If the number of California witnesses, documents, proximity to the company operations on the ground were inconvenient or a problem from New York, the Nominal Defendant would never have ignored law firms all through out California, Arizona and the rest of the nation and selected as the firm to conduct its audit, a firm just outside of New York City. The Nominal Defendant could have selected a Los Angeles law firm who would travel once to New York City and stay close to the all important other factors in the investigation. A New York region firm was chosen because the practical considerations of the investigation make New York the location comparable to or better than California in which to do the work.

Apparently, the arguments made on the instant motion were not found persuasive two months ago by the Nominal Defendant.

### Convenience of the Witnesses

The convenience of the witnesses is "the most important factor in considering a §1404(a) motion to transfer." *Herbert Ltd. P'ship v. Electronic Arts, Inc.*, 325 F.Supp.2d 282, 286 (S.D.N.Y. 2004). The convenience of non-party witnesses is generally regarded as a more important factor than convenience of the parties. *Id.* In evaluating this factor, "a court does not merely tally the number of witness who reside in the current forum in

comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Id.* In this case, the convenience of the witnesses factor weighs heavily in favor of the Plaintiff.

In moving for a transfer of venue, the movant is required to identify potential material witnesses and provide a general statement of the substance of their expected testimony. *Frame*, 2007 U.S. Dist. LEXIS 72720, *13-14. A party may not "artificially inflate the number of witnesses to be inconvenienced by listing witnesses whose testimony is not material." *Id.* at 14 (quoting *NBA Props., Inc. v. Salvino, Inc.*, 2000 U.S. Dist. LEXIS 3799, *20 (S.D.N.Y. 2000)).

Michael Gardner's Health

Michael Gardner is the president of Plaintiff Baytree Capital Associates, LLC. While Baytree Capital is acting derivatively on behalf of the Plaintiff, Broadcaster, Inc., Michael Gardner is a trial and deposition witness. Michael Gardner is unable to travel to the Central District of California due to his renal cancer surgery described more fully in his accompanying declaration. Gardner Declaration ¶3. As such, the Southern District of New York is the most, and indeed the only, convenient forum for a party and key witness in this action. *See Audi AG v. Volkswagon of America, Inc.*, No. 04-70626, 2007 U.S. Dist. LEXIS 10054, *12 (E.D. Mich. 2007) (considering the illness of a witness as a factor weighing in favor of placing the forum in the district where the ill witness is located).

<u>The Board Members Choose New York</u>

Four of five members of the Board of Directors of the company during the relevant time period work in, reside near, or prefer New York City as a venue. Mr. Goodman resides in New York City. *See* Goodman Declaration at ¶3-5. Mr. Orza has stated his preference for New York City. *See* Orza Declaration at ¶6. Mr. Wade lives in New Jersey. Mr. Berman lives in Connecticut. Another member of the Board is Mr. Bruce Galloway, the former Chairman of the board of directors of Broadcaster. Mr. Galloway is a resident of New York. Mr. Galloway is expected to testify regarding his first hand knowledge of the conduct of the defendant board members and the company which caused his resignation.

<u>Nominal Defendant's Missing Witnesses</u>

The second overriding issue concerning the convenience of the witnesses is the fact that Defendants have not provided either the Court or Plaintiff with a list of the various arms-length, third-party companies that ran the many millions of dollars worth of advertisements and/or traffic generation.[3] Defendants have claimed that they have not yet had sufficient time to print out a list of the names and addresses of the companies. Defendants have had the time to print out a few documents concerning only two companies regarding a possible $322,634.01 worth of advertising or traffic generation[4], listing relatively small payments to Ad On and Value Click. Ad On is located in Arizona and Value Click's advertising division is in New York City. It is very possible that all of the other companies that ran the millions of dollars worth of advertisement will be

---

[3] Documents provided by Nominal Defendant are annexed to the Sullivan Declaration as "<u>Exhibit B</u>".
[4] Incredibly, even this miniscule amount of information hurts Defendants as the documents reveal that the $322,634.01 may actually be work with other non-Broadcaster accounts "whited-out" from the documents.

located in New York City, or Connecticut or some other state closer to New York than California. Until Defendants take the time to tell the Court, we do not know.

Representatives from the arms-length, third-party companies are by far, the most material of the witnesses that could appear before this Court. The fact that they are the most material of the witnesses makes their convenience the most significant. *Herbert Ltd. P'ship v. Electronic Arts, Inc.*, 325 F.Supp.2d 282, 286 (S.D.N.Y. 2004). The refusal of Defendants to provide even a simple complete list of names and addresses creates something akin to an equitable estoppel against their listing only a few party witnesses and claiming they live in California.

The Nominal Defendant provides a list of twenty seven (27) possible witnesses, eighteen (18) of which reside in California. The Nominal Defendant then argues that because it has more California witnesses, the venue should be transferred there. Beyond the irrelevance of a simple witness tally, a review of these individuals reveals the absence of persuasive authority in the listing attempted by the Nominal Defendant.

Party Witnesses are Less Persuasive

Only three of the eighteen Californians listed are true non-party witnesses: Gale, a former FTC investigator; Google Analytics, and Value Click. The remaining fifteen of the listed Californians are parties or lawyers, accountants or current/former employees of parties. The convenience of these fifteen party witnesses is generally regarded as a less important factor than convenience of all of the other non-party witnesses. *Herbert*, 325 F.Supp.2d at 286. Thus, fifteen of the eighteen Californians are accorded less weight than all of the other non-party witnesses.

Nominal Defendant's "Piling On" the FTC Prosecution

The next problem with the list of the Nominal Defendant is the "piling on" of the marginally relevant past FTC prosecution of AccessMedia *et al*. Along with Bruce Gale, four of the fifteen party witnesses are offered for no other reason than to testify as to the details of the past FTC prosecution. The past FTC Prosecution of AccessMedia is of limited relevance to issue of the current improper transfer of millions of dollars to related parties. Using the exact same language in describing the expected testimony of five FTC witnesses, the Nominal Defendant lists not one, but two attorneys from Fulbright & Jaworski that second-seated behind Loeb & Loeb in the past FTC prosecution[5]. Many of the other Defendant witnesses were intimately involved in the FTC prosecution and are able to provide any background information that could be required. At best, the FTC witnesses are redundant and only one witness is necessary among the listed O'Malley, Fernald, Brent, Campos, and Gale.

Nominal Defendant's Non-Party Witnesses

Even the three non-party witnesses listed as Californians hurt the argument of the Nominal Defendant. Google Analytics and Value Click are not true Californian witnesses and Gale, an FTC investigator, is the least material of all of the witnesses listed. The division of Value Click that provides advertising services for clients has no offices in Los Angeles and has one of its three offices on East 52nd Street in Manhattan[6]. Google Analytics services are provided out of Google offices in New York City and all over the world, including Mountain View, California. Bruce Gale is the least material witness on

---

[5] Using the phrase "the nature of the FTC proceedings; and the truth or falsity of the allegations raised therein", the Nominal Defendant lists John O'Malley, Brandon Fernald, Daniel Brent, Jose Sanchez Campos, and Bruce Gale as FTC witnesses. <u>Licker Declaration</u> ¶¶20(i),(j),(l)(m) & (p).
[6] The division head office is located in San Francisco.

the list. As previously noted, the FTC investigation of AccessMedia is of limited relevance herein and can be addressed by almost half of the party witnesses listed by the Nominal Defendant. Two of the three non-party witnesses are located in New York and the third is of marginal significance.

Notably, while the Nominal Defendant lists Ad On Network as an Arizona corporation, it neglects to mention that in January 2008, the company was acquired by Prime Visibility Media Group, Corp., a company based in Melville, New York. Thus, the only three arms-length, third party, advertising/traffic generation professionals mentioned by the Nominal Defendant are more closely related to New York City than California. Ad On Network's owner is in New York. Value Click's advertising services division is in New York. Google has offices in New York. Ironically, if Defendants continue in their failure to provide a list of the names and addresses of the advertiser & traffic generators, the most material witnesses provided by the Nominal Defendant, these three companies, will be New York witnesses requiring a New York venue.

If only one of the five FTC witnesses other than Gale were to testify concerning the FTC prosecution, there would remain only eleven witnesses from California, all of which would be parties or lawyers, accountants or current/former employees of parties. Thus, sixteen of the twenty seven witnesses listed by the Nominal Defendant would not be from California and do not support the instant motion.

Nominal Defendant's Non-Party Witnesses

Even the three non-party witnesses listed as Californians hurt the argument of the Nominal Defendant. Google Analytics and Value Click are not true Californian witnesses and Gale, an FTC investigator, is the least material of all of the witnesses listed. The

division of Value Click that provides advertising services for clients has no offices in Los Angeles and has one of its three offices on East 52nd Street in Manhattan[7]. Google Analytics services are provided out of Google offices in New York City and all over the world, including Mountain View, California. Bruce Gale is the least material witness on the list. As previously noted, the FTC investigation of AccessMedia is of limited relevance herein and can be addressed by almost half of the party witnesses listed by the Nominal Defendant. Two of the three non-party witnesses are located in New York and the third is of marginal significance.

Notably, while the Nominal Defendant lists Ad On Network as an Arizona corporation, it neglects to mention that in January 2008, the company was acquired by Prime Visibility Media Group, Corp., a company based in Melville, New York. Thus, the only three arms-length, third party, advertising/traffic generation professionals mentioned by the Nominal Defendant are more closely related to New York City than California. Ad On Network's owner is in New York. Value Click's advertising services division is in New York. Google has offices in New York. Ironically, if Defendants continue in their failure to provide a list of the names and addresses of the advertiser & traffic generators, the most material witnesses provided by the Nominal Defendant, these three companies, will be New York witnesses requiring a New York venue.

If only one of the five FTC witnesses other than Gale were to testify concerning the FTC prosecution, there would remain only eleven witnesses from California, all of which would be parties or lawyers, accountants or current/former employees of parties. Thus, sixteen of the twenty seven witnesses listed by the Nominal Defendant would not be from California and do not support the instant motion.

---

[7] The division head office is located in San Francisco.

Plaintiff's Witnesses

With respect to Plaintiff's witnesses, the majority of its witnesses either live or work in the New York area or have stated that the Southern District of New York is a more convenient forum than the Central District of California. Again, it is important to note that among these "New York" witnesses are four of the five members of the Board of the company. Mr. Goodman resides in New York City. *See* Goodman Declaration at ¶3-5. Mr. Orza has stated his preference for New York City. *See* Orza Declaration at ¶6. Mr. Wade lives in New Jersey. Mr. Berman lives in Connecticut.

Another member of the Board is Mr. Bruce Galloway, the former Chairman of the board of directors of Broadcaster. Mr. Galloway is a resident of New York. Mr. Galloway is expected to testify regarding his first hand knowledge of the conduct of the defendant board members and the company which caused his resignation.

Thus, Plaintiff's "New York" witnesses include the current and former Chairpersons of the company and four out of five current members of the Board of Directors.

As set forth in the Sullivan Declaration, at this time, Plaintiff intends to call sixteen witnesses. Only three of the witnesses, Defendants Quan, Garroni and Mills, reside in California. All three are party witnesses. As to Defendants Quan and Mills, the issue of the suitability New York as a venue has already been decided by the removal of the matter of *Paul Goodman v. Broadcaster, Inc., Martin Wade, Nolan Quan and Blair Mills*, Case No.: 08-CV-2480 (Stanton, J.) from the Supreme Court of New York to the United States District Court for the Southern District of New York. *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 72 (2d Cir. 1998) ("[T]he removal

statute provides that venue is proper in the district court of the United States for the district and division embracing the place where such action is pending. 28 U.S.C. § 1441(a)[.] Moreover, the removal statute, and not the ordinary federal venue statute, 28 U.S.C.A. § 1391 . . . governs venue in removed cases.") (citation omitted). Thus, as concerns the three most significant defendants, Defendants Broadcaster, Inc., Martin Wade, Nolan Quan and Blair Mills, the issue of the appropriateness of New York as a venue has been decided.

With the exception of Andrew Garroni, the remaining witnesses are located in New York, with one witness in Massachusetts and Florida each. Ad On Network is an Arizona resident with a New York resident owner. Unlike the witness list provided in the Licker Declaration, we submit that Plaintiff has not included any tangential or cumulative witnesses and that all of Plaintiff's witnesses will provide only material testimony. Indeed, our witness list is conservative in being restricted only to those individuals and corporate representatives who had a direct knowledge of the matters complained of herein, rather than providing for the cumulative and unnecessary testimony as to the "nature of the FTC proceeding" which is not at issue in this case.

Accordingly, the convenience of the witnesses factor weights decidedly in the Plaintiffs favor.

### Convenience of the Parties

The convenience of the parties factor will not be grounds for transfer if it represents "mere shifting of the inconveniences" from one party to another. *Frame*, 2007 U.S. Dist. LEXIS 72720, *15. Here, the Nominal Defendant has not met its burden of showing that a transfer would amount to something more than a mere shift of the

inconvenience from parties located in the Los Angeles area to those located in the New York area.  Furthermore, in light of Plaintiff representative Michael Gardner's health condition, this factor weighs heavily in favor of the Plaintiff.

The Nominal Defendant points to the case of *Strauss v. West Highland Capital, Inc.*, 00 Civ. 01184, 2000 U.S. Dist. LEXIS 14937 (S.D.N.Y. 2000), for the proposition that a nominal plaintiff's convenience is not an issue when the forum state is not the state in which the relevant corporation was incorporated or headquartered.  *See* Nominal Defendant's Memorandum of Law at 14.  However, the Nominal Defendant neglected to include the full quotation from the case, in which the court stated that the nominal plaintiff's convenience was not an issue in that particular case because the corporation was not incorporated or headquartered in the forum state "and [nominal plaintiff] is neither the real party in interest nor a likely trial or deposition witness."[8] *Strauss*, 2000 U.S. Dist. LEXIS 14937, *6.

As previously noted, Michael Gardner is president of Baytree Capital and will be a material witness in this case.  The recent cancer surgery of Michael Gardner is dispositive of the issue of party witness convenience.

### Location of Relevant Documents and Relative Ease of Access to Sources of Proof

The Nominal Defendant cannot show any inconvenience related to the location of relevant documents.  While it states that many of the relevant documents are located in California, it also states that these documents are electronic.  "Access to documents and other proof is not a persuasive factor in favor of transfer without proof that the documents

---

[8] It is also worth noting that the Nominal Plaintiff's counsel distorts the meaning of the opinion by bracketing the word "[California]" in order to replace the word "Texas."  While Nominal Defendant's counsel might consider such tactics appropriate, Plaintiff's counsel refuses to change the facts of the opinions that it cites in order to make them better support its argument.

are particularly bulky or difficult to transport." *Frame*, 2007 U.S. Dist. LEXIS 72720,

*16-17. In this case, Nominal Defendant cannot show that it would be difficult to

transmit these documents to New York. The maintenance of a Broadcaster office in New

York would surely have required access to the files of the company.

Again, the fact that Broadcaster selected an audit law firm in the New York

region empirically establishes the fact that the documents are easily accessible in New

York.

### Locus of the Operative Facts

As set forth above, the locus of operative facts is as much situated in New York as

it is in California. Initially, there can be little dispute that the work of the Board of

Directors was centered in New York. We begin with the disingenuous statement by

Defendant Wade that "[m]eetings of the board of directors were conducted, to the best of

my recollection, all telephonically, enabling directors from all locales to participate."

Wade Declaration ¶10. As detailed in the Declarations submitted herewith, the meetings

of the Board of Directors were conducted in Broadcaster's office in New York, and

involved the participation of a majority of the Board in person at the New York office.

Orza Declaration, ¶ 4, Goodman Declaration, ¶ 10-11, and Gardner Declaration, ¶ 7.

Only Board Members Orza and Mills participated telephonically, Mr. Orza from

Oklahoma and Mr. Mills from California. The fact that Board management was always in

New York is established by the fact that when Mr. Orza sought to attend a Board

meeting, he went to New York, not California. Orza Declaration, ¶ 5.

Executive Management of Broadcaster is also located in New York. The Wade

Declaration, which purports to provide "context" for his activities in New York, provides

only disingenuous representations regarding the extent of the activities of Broadcaster in New York.  Wade states that, "[a]t no time have the operations of Broadcaster been conducted from that office [in New York], nor was it a 'Broadcaster office.'" Wade Declaration at ¶9.  Yet, Wade himself contradicted this statement by signing and filing an SEC Form 10-KSB on behalf of Broadcaster on October 15, 2007 which stated that "Baytree also provides a New York office for us which is used on a regular basis by our Chief Executive Officer, Mr. Martin R. Wade, III." SEC Form 10-KSB at 49 (*emphasis added*). Exhibit A at 49. The Declarations submitted herewith establish that Mr. Wade worked out of the New York office approximately three days per week. *See* Orza Declaration, ¶ 3, Goodman Declaration, ¶ 9-14,  Gardner Declaration, ¶ 5-8.  The other days were spent working out of his home in nearby New Jersey. Mr. Wade worked in California far less than he worked in the New York region. Clearly, Broadcaster maintained an office in New York which was used "on a regular basis" by its CEO.  This alone provides grounds for denying the motion to transfer venue.  *Kirkland v. NY State Department of Correction*, 358 F.Supp. 1349, 1351 (S.D.N.Y. 1973) (holding that despite the fact that defendants would be inconvenienced without a transfer of venue, the defendants maintenance of an office in the current district constituted reason to deny the motion to transfer).

As it had no genuine operating business other than the relatively inactive web site, nearly a majority of the business activity of Broadcaster concerned its extensive interaction with the investor relations, venture capital and public relations. *See* Goodman Declaration, ¶ 12-14, Gardner Declaration, ¶ 8-9.  Broadcaster management invested a great deal of its time promoting the web site and stock to the investor relations, venture

capital and public relations business communities. Nearly all of this activity occurred in the New York metropolitan region.

The investor and public relations work of the company was located exclusively in New York City. The work was so focused on New York City that Broadcaster retained a New York City firm as its principal consultant. Broadcaster retained The Investor Relations Group located in New York City. The investor relations work was so intensive that there was a Daily Update of the activity centered generated by the New York City operation. The Daily Update recounted the multifaceted outreach effort of Broadcaster from New York City to the investor community. *See* Goodman Declaration, ¶ 13, and Gardner Declaration, ¶ 8. Annexed as "Exhibit C" to the Sullivan Declaration are excerpts from the "Daily Update" which outlines Defendant Wade's schedule of public relations activities in New York.

The public relations work of Broadcaster was also centered on New York City. Again, the work was so focused on New York City that Broadcaster hired the quintessential New York public relations firm Rubenstein Associates, Inc. Goodman Declaration, ¶ 14, Gardner Declaration, ¶ 8.

Furthermore, many of the acts complained of in this action constitute violations of the securities law arising from misrepresentation and false statements made to the investing public. The work that gave rise to these violations occurred almost exclusively in New York. The work consisted of gaining publicity for the Company and selling the Company as a profitable and stable business to potential investors. *See* Goodman Declaration, ¶ 12-14, Gardner Declaration, ¶ 8-9. It is from these and other related actions that Plaintiff intends to prove Broadcaster's management maintained a scheme

and pattern of disseminating misinformation regarding the strength of the Company and the true nature of its operations.

Again, the fact that Broadcaster selected an audit law firm in the New York region empirically establishes the fact that the locus of the business operations relevant to the question of transferring money to related parties lies in New York. If the locus for such an issue were in California, the company could have and would have selected a California firm.

As described above, the locus of the operative facts lies largely in New York, and as such weighs in favor of the Plaintiff.

***The Availability of Process to Compel the Attendance of Unwilling Witnesses.***

Although not noted in the Memorandum of Law, the Licker Declaration briefly notes his belief that unwilling witnesses in California will not be available in a venue in New York while non-California persons would be subject to jurisdiction in California due to "challenged business dealings" in California. Licker Declaration, ¶ 17-18. This brief observation is not correct. First, to the extent non-California persons are subject to California jurisdiction due to "challenged business dealings", as the "challenged business dealings" also occurred in New York, all the California witnesses are similarly subject to New York jurisdiction.

Nearly all of the California witnesses listed by the Nominal Defendant are parties, or lawyers, accountants or current/former employees of parties and are thus, as a practical matter, unlikely to be unwilling. If there were to be a concern, it would arise out of the availability of the testimony of the arms-length, third-party entities that Defendants claim received the many millions of dollars concerning which Defendants have as yet failed to

identify. To date, compelling the testimony of these all important witnesses is best accomplished in New York. Ad On is owned by a New York company not a California company. The advertising division of Value Click is also located in New York. It is very possible that the rest of the list of companies alleged to receive the millions of dollars will be similarly available in New York and of questionable availability in California.

In any event, this issue is not dispositive. To the extent that a witness is unwilling, his or her testimony may be obtained and admitted by deposition. *George v. Ford Motor Co.*, No. 03 Civ. 7643, 2007 U.S. Dist. LEXIS 61453 (S.D.N.Y. 2007).

### *Relative Means of the Parties*

The Nominal Defendant Broadcaster is funding the expenses of all of the defendants in this and the related actions. Thus, practically speaking the means of the defendants herein are, as relates to this litigation, limitless. Additionally, Defendant Quan is very wealthy. Goodman Declaration, ¶ 4. On the other hand, as previously noted this Court has indicated that the question of venue will be reviewed for the four related litigations together. As a practical matter, if this matter is transferred to California, Mr. Goodman will be unable to pursue two of the actions and his ability to assist in this action would be extremely limited.

### *The Forum's Familiarity with Governing Law*

It is anticipated that United States Courts in both New York and California will be familiar with governing law. It is worth noting that the present Court is not only familiar with derivative actions but has particular and sophisticated familiarity with actions involving publicly traded internet companies.

***Weight Accorded to Plaintiff's Choice of Forum***

The Nominal Defendant points out that while "plaintiff's choice of forum is normally accorded considerable deference, it is entitled to less weight where … the case's operative facts have little or no connection with the chosen forum." *Nat'l Union Fire Ins. Co. v. CPMS Investments*, No. 93 Civ. 5088, 5089, 5090, 1996 U.S. Dist. LEXIS 83, *6 (S.D.N.Y. 1996). However, the maxim has no applicability in this case. Here, the Plaintiff chose the Southern District of New York precisely because of the forum's strong connection with the case's operative facts. As set forth in detail above, the Plaintiff's claims arise out of and stem from the management decisions made by the board of directors, the executive management of the company, and the various misrepresentations regarding the expenditures of money, purchasing of advertising/traffic generation and the strength of the Company. All of these actions took place largely in New York.

While this reduced deference may be applied to a plaintiff's choice of forum in a derivative suit where the derivative plaintiff's choice is based on the convenience of maintaining a suit within his home district rather than on the locus of operative facts, this is not a case where the derivative plaintiff's choice is irrational or inconvenient. Here, the Plaintiff's choice was based upon the forum's connection with the operative facts, not upon the "accidental residence" of the Plaintiff, as in *Strauss*, 2000 U.S. Dist. LEXIS 14937, *6. Moreover, while the usual amount of deference may be lessened, by no means is the deference completely eliminated. *WellQuest Int'l Inc. v. Genesis Intermedia.com, Inc.*, No. 00 Civ. 6558, 2001 U.S. Dist. 16757, *17 (S.D.N.Y. 2001) (holding that even when lessened, the plaintiff's choice of venue is "certainly entitled to significant weight").

Accordingly, the Plaintiff's choice of venue should be afforded significant deference as the situs of many of the acts complained of in this case, and as such should not be disturbed.

***Trial Efficiency and the Interest of Justice***

Finally, judicial economy and the interest of justice are served by maintaining the action in the Southern District of New York. There are several issues that are dispositive of the questions of trial efficiency and the interest of justice. The first is the problem of the four related matters. A transfer of this matter to California will result in one of two unfortunate results. If this Court transfers all four matters together, it is likely that Mr. Goodman will be compelled to abandon the two matters in which he is a plaintiff. Goodman Declaration, ¶ 5. If this Court transfers only the matters in which Mr. Goodman is not the plaintiff, the result will be unreasonable from the perspective of judicial economy. The solution to this dilemma is to deny the request for transfer.

The transfer of all four matters will also have the anomalous result that a libel action between a citizen of New York and a citizen of New Jersey will be tried in California. *Gardner v. Wade*, Index No.: 103276/08. Again, separating the matters would unnecessarily waste judicial resources.

The third issue that in hindsight may become the most important is recent renal cancer surgery of Mr. Gardner. As noted in the Gardner Declaration, given his age and condition, limiting the need for Mr. Gardner to travel is a desirable result.

Accordingly, trial efficiency and the interest of justice favor maintenance of the action in the Southern District of New York.

**B.**    **The Southern District of New York is a Proper Forum in which to Commence this Action.**

The Plaintiff's choice of venue in the Southern District of New York is rationally based upon the nature of the acts complained of and the location of the residences of the Plaintiff, the Nominal Defendant, certain individual Defendants, and many of the key material witnesses.  While it is possible that venue may also be proper in the Central District of California,[9] the Nominal Defendant's assertion that the case cannot be maintained in the Southern District of New York is wholly without merit.[10]

Removal Governs Propriety of Venue

The removal of the matter of *Paul Goodman v. Broadcaster, Inc., Martin Wade, Nolan Quan and Blair Mills*, Case No.: 08-CV-2480 (Stanton, J.) from the Supreme Court of New York to the United States District Court for the Southern District of New York is dispositive of the issue of the contacts and appropriate venue questions raised by the Nominal Defendant as against the Defendants named in the removed action. *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 72 (2d Cir. 1998) ("[T]he removal statute provides that venue is proper in the district court of the United States for the district and division embracing the place where such action is pending. 28 U.S.C. § 1441(a)[.] Moreover, the removal statute, and not the ordinary federal venue statute, 28 U.S.C.A. § 1391 . . . governs venue in removed cases.") (citation omitted). Thus, as concerns the three most significant defendants, Defendants Broadcaster, Inc.,

---

[9] Plaintiff does not concede that the Central District of California is a proper venue for this action.

[10] Nominal Defendant's reliance on *Columbia Pictures Indus., Inc. v. Fung*, 447 F.Supp.2d 306 (S.D.N.Y. 2006), is misplaced.  That case involved a defendant with only a single contact with the forum who sought to transfer the case to the district in which the large corporate plaintiff was headquartered. *Id.* The present case presents an inapposite situation.

Martin Wade, Nolan Quan and Blair Mills, the issue of the appropriateness of New York as a venue has been decided.

Sufficient Contacts

As a company "resides" in "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced," 28 U.S.C. §1391(c), the Nominal Defendant is deemed to reside in New York for the purposes of this action. The Nominal Defendant is subject to personal jurisdiction in New York through, *inter alia*, its contacts in New York, including its (1) maintaining an office and employees in New York, (2) conducting board meetings and other management meetings in New York, (3) partially negotiating, executing, and performing the merger agreement and other contracts in New York, (4) maintaining an interactive website with a nationwide subscriber base that included solicitation of New York business, (5) causing its employees located in California to travel to New York for certain meetings and to make phone calls to New York out of which elements of the instant action arose, and (6) listing its shares on the Over the Counter Bulletin Board located in New York. As such, the Southern District of New York is a proper venue for this action and the Nominal Defendant's further contention that a jurisdictional issue exists is without merit and does not present a barrier to this conclusion.

Common Enterprise Business

Other Defendants are similarly tied to New York. The FTC determined that all of the corporate defendants were engaged in a common enterprise to market the Malware throughout the tens of thousands of computers in all jurisdictions in the United States. *See FTC v. Digital Enterprises d/b/a Movieland et al*, Case No. 06-4923; Complaint, pg.

8. The Nominal Defendant has admitted that many millions of dollars were received from individuals compelled to pay fees to stop the pop ups. The common enterprise purposely availed itself of most jurisdictions in the United States to sell its subscription thereby submitting to each of these jurisdictions.

RICO/Securities Questions

The question of the availability of the Defendants is mooted by the national service of process provided for all the defendants herein under 18 U.S.C. §196(b).

The Complaint alleges violations of federal securities laws, breaches of Defendants' fiduciary duties, and violation of the RICO Act. As the claims are not founded on diversity of citizenship, venue is proper under 28 U.S.C. §1391(b) because "a substantial part of the events or omissions giving rise to the claim occurred" in New York, in Broadcaster's office in New York, as well as during meetings with individuals and companies located in New York.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Baytree Capital Associates, LLC, on behalf of Broadcaster, Inc., respectfully requests that this court enter an Order denying the motion to transfer venue of Nominal Defendant Broadcaster, Inc.

Dated: New York, New York
        April 7, 2008

*CONTINUES ON NEXT PAGE*

27

Respectfully submitted,

SULLIVAN GARDNER, PC


By: _____S/_____
Peter Sullivan (PS0985)
475 Park Avenue So.
New York, New York 10016
(212) 687-5900
Attorneys for Plaintiff